# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSARIO I. COTA,<br><br>          Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | 1:08-cv-00842-SMS<br><br>DECISION AND ORDER ON SOCIAL SECURITY COMPLAINT (DOC. 2)<br><br>ORDER DIRECTING REMAND PURSUANT TO SENTENCE FOUR of 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT FOR PLAINTIFF ROSARIO I. COTA AND AGAINST DEFENDANT MICHAEL J. ASTRUE |

Plaintiff is represented by counsel and is proceeding in forma pauperis with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1]

---

[1] On July 25, 2008, Judge Lawrence J. O'Neill ordered the case reassigned to Magistrate Judge Gary S. Austin for all further proceedings. On October 31, 2008, Judge Austin disqualified himself from all proceedings in this action, and the action was reassigned to the undersigned Magistrate Judge.

The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

I. <u>Procedural History</u>

On July 7, 2005, Plaintiff, who was born on December 18, 1964, and could not understand and speak English, protectively applied for DIB and SSI, alleging disability since June 1, 2005 due to pain and lack of strength to work caused by fibromyalgia, arthritis, and thyroid problems. (A.R. 80-85.) After Plaintiff's claim was denied initially and on reconsideration, Plaintiff requested, appeared at, and testified with the help of a Spanish language interpreter and an attorney at a hearing before the Honorable Peter J. Valentino, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), held on January 7, 2008. (A.R. 23-36, 16, 260-83.) On January 25, 2008, the ALJ denied Plaintiff's application for benefits. (<u>Id.</u> at 16-22.) After the Appeals Council denied Plaintiff's request for review on April 16, 2008, Plaintiff filed the complaint in this action on June 16, 2008. (<u>Id.</u> at 5-7.) Briefing commenced on January 29, 2009, and was completed with the filing on March 12, 2009, of Plaintiff's reply to Defendant's opposition.

II. <u>Standard and Scope of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla,"

Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of

3

the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

III. Disability

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the

4

impairment, 20 C.F.R. § 404.1520 (1997);[2] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. See 20 C.F.R. § 416.920.

Here, the ALJ determined that Plaintiff had fibromyalgia, a severe impairment; however, Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment. (A.R. 18-19.) Plaintiff had additional limitations that were not expressly identified in the ALJ's decision; however, he referred to them as having been communicated to the vocational expert (VE) at the hearing and having prompted the VE to opine that Plaintiff could perform the requirements of representative occupations of garment folder and small parts

---

[2] All references are to the 2008 version of the Code of Federal Regulations unless otherwise noted.

assembler. (A.R. 21.) The record reflects that the jobs found by the VE were consistent with light, unskilled work with a sit-stand option. (A.R. 280-81.) The ALJ found that although Plaintiff could not perform the full range of light work, and although Plaintiff was unable to perform her past, relevant, unskilled work, she could perform jobs that existed in significant numbers in the national economy, including representative occupations such as garment folder, with 880 regional and 1.2 million national jobs, and small parts assembler, with 920 regional jobs and 1.1 million national jobs. (A.R. 21.) Therefore, Plaintiff was not disabled from June 1, 2005, through the date of the ALJ's decision. (A.R. 22.)

III. <u>Subjective Complaints</u>

Plaintiff argues that because the medical evidence "wholly associates" Plaintiff's subjective symptoms with a clinically demonstrated impairment, the impairment involves solely subjective symptoms, and further because the reports of the treating physicians included in turn reports of Plaintiff's subjective symptoms that were consistent with the opinions of the treating physicians, the ALJ should have accepted Plaintiff's testimony.

A. <u>Plaintiff's Testimony</u>

Plaintiff, who was forty-three years old, testified that she lived in a house with her husband and her two children, aged seven and fifteen. (A.R. 264-65.) Plaintiff felt strong headaches once or twice a month, and she felt pain in her arms, back, neck, lower back, legs, and all her body. (A.R. 277-78, 267-68.) Also, the strength in her arms and legs would run out so that she was

unable to work. (A.R. 268.) On an average day, Plaintiff could stand for fifteen minutes before her legs began to buckle; walk two or three blocks before she would look for a place to sit down because of fatigue and pain; and sit for about twenty-five to thirty minutes before needing to stand. (A.R. 276-77.) Her previous doctor, Dr. Bravo,[3] advised Plaintiff to walk, but she testified that she could not walk. (A.R. 273.) Plaintiff had a California driver's license and her own car, which she occasionally drove to take her children to school and go shopping; she prepared meals with her children's help, performed light household chores such as washing dishes, and attended church weekly. She could not perform heavy housework. (A.R. 269-71.) She could lift a gallon of milk with both hands. (A.R. 277.)

As of May 2005, due to pain she was unable to do her previous work of picking grapes, defoliating, and tipping the vines, which required standing and stooping for most of the day and lifting and carrying from twenty-one to twenty-five pounds; she experienced a very strong pain in her entire body and a lack of strength in her arms and legs. (A.R. 264-71.)

Plaintiff testified that Dr. Berry, her treating rheumatologist, had recently increased her dose of Neurontin because her pain interfered with her sleep; her medications, including Neurontin and Ibuprofen for pain and Amitriptyline to help her sleep, helped a little but caused her sleepiness and

---

[3] Plaintiff testified that Dr. Bravo had left and was replaced with Dr. Nunez, who practiced with Dr. Patel and treated Plaintiff's thyroid and other illnesses, such as a cold; Dr. Berry, who treated Plaintiff's fibromyalgia, was not in the same clinic as Drs. Nunez and Patel. (A.R. 274-75.) Plaintiff's attorney stated for the record that according to his knowledge, neither Dr. Patel or Berry was associated with the Neurological Medical Group in Bakersfield; Patel was from Comprehensive Medical Group. (A.R. 273.)

dizziness, which caused her to lie down between eight and ten times a day for twenty to thirty minutes each time. (A.R. 269-273, 276.) Plaintiff asked to stand during the hearing because of anxiety or tiredness in her legs and a lot of pain in the back and lower back. (A.R. 273, 277.)

## B. The ALJ's Decision

The ALJ noted that the record established fibromyalgia manifested by generalized pain, stiffness, fatigue, anxiety, and poor sleep. (A.R. 18.) Further, the ALJ found that Plaintiff's medically determinable impairments could be reasonably expected to produce the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (A.R. 19.) The ALJ stated:

> The claimant is only treated for her fibromyalgia on an infrequent basis. Her pain has been moderated by the prescribed medications including Cymbalta and Levoxyl (Exhibit 7F/15).
>
> The analysis of Plaintiff's nonsevere impairments, supra, is incorporated by reference herein[.][4]
>
> The weight of the objective evidence does not support the claims of the claimant's disabling limitations to the degree alleged. Indeed, progress notes report the claimant's reported symptoms but very little objective clinical findings (Exhibits 7F and 8F.) The only mention of trigger points was on December 16, 2005, it (sic) which it was noted that the claimant had trigger points

---

[4] With respect to Plaintiff's impairments that the ALJ found to be nonsevere, the ALJ determined that 1) Plaintiff's hypothyroidism was stable with appropriate treatment, and Plaintiff had not required any emergency room or hospital treatment in connection with the condition; 2) Plaintiff's diagnosed osteoarthritis was not supported by significant clinical signs or symptoms exhibited on physical examination that established a severe impairment; 3) Plaintiff's headaches were not documented as a consistent problem, Plaintiff had been neurologically intact and had not been referred for any neurological workup or for an MRI scan or CT scan of her brain, and she had not been prescribed strong pain medications such as Imitrex that were commonly associated with severe and recurrent headaches; and 4) Plaintiff's complaints of occasional depression and anxiety were associated with her fibromyalgia condition, she had not been referred to mental health for evaluation, and there were no abnormal, mental, clinical signs. (A.R. 18-19.)

8

consistent with significant fibromyalgia (Exhibit 8F/8).
While she has complained of weakness, she has a normal
gait and does not require any assistive devices to ambulate
(Exhibit 7F/23). She has been neurologically intact.
EMG/NCV testing was normal (Exhibit 2F/4).

The claimant has not generally received the type of
medical treatment one would expect for a totally
disabled individual. The claimant's courses of treatment
since her alleged disability onset date has generally
reflected a conservative approach. She has only been
treated with medications.

The record does not show that the claimant requires
any special accommodations (e.g., special breaks or
positions) to relieve her pain or other symptoms.

In contrast to the allegations of the claimant's
disabling fatigue and weakness, she does not exhibit
any significant disuse muscle atrophy, loss of strength,
or difficulty moving that are indicative of severe and
disabling pain.

Although the claimant has been prescribed and has
taken appropriate medications for the alleged
impairments, which weighs in her favor, the objective
medical evidence shows that the medications have
been relatively effective in controlling the claimant's
symptoms. Moreover, the claimant has not alleged any
side effects from the use of medications.

In contrast to the claims of the claimant's disability
due to (sic)

There is no evidence of loss of weight due to loss
of appetite due to pain. There is no evidence of sleep
deprivation due to pain.

The claimant's allegations of significant limitations
are not borne out in her description of her daily
activities. The claimant is able to drive an
automobile that she uses to take her children to
school, and grocery shop. She is able to do light
household chores.

None of the claimant's physicians have opined that
she is totally and permanently disabled from any
kind of work.

Consequently, the claimant's allegations are not
credible to establish a more restrictive residual
functional capacity than that found above.

(A.R. 19-20.)

C. <u>Analysis</u>

The court in <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007), summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. See <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" <u>Morgan</u>, 169 F.3d at 599 (quoting <u>Lester</u>, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." <u>Id.</u> Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." <u>Id.</u>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. See S.S.R. 02-1p (Cum. Ed.2002), available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R. 96-7p (Cum. Ed.1996), available at 61 Fed.Reg. 34,483-01 (July 2, 1996). An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. See 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); see <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." <u>Fair</u>, 885 F.2d at 603; see also <u>Thomas</u>, 278 F.3d at 958-59.

The factors to be considered in weighing credibility are set forth in the regulations and pertinent Social Security rulings. They include the claimant's daily activities; the location,

duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the symptoms; treatment, other than medication, the person receives or has received for relief of the symptoms; any measures other than treatment the claimant uses or has used to relieve the symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929; S.S.R. 96-7p.

With respect to the course of analysis directed by the regulations, the ALJ is first obligated to consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once it is determined that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the capacity for work. §§ 404.1529(b), (c); 416.929(b), (c). The ALJ will consider all available evidence. To the extent that the claimant's symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, the symptoms will be determined to diminish the claimant's capacity for basic work activities. §§ 404.1529(c)(4); 416.929(c)(4). A claimant's statements will not be rejected solely because unsubstantiated by the available objective medical evidence. §§ 404.1529(c)(2); 416.929(c)(2).

Further, the pertinent Social Security Ruling provides in pertinent part that an ALJ has an obligation to articulate the reasons supporting the analysis:

> ...When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

S.S.R. 96-7p at 4.

Here, as the foregoing statement of the pertinent legal principles demonstrates, the mere fact that Plaintiff reported symptoms to her medical sources that were consistent with her subjective complaints does not compel wholesale acceptance of those complaints. However, the ALJ's consideration and weighing of the evidence is not immune from review. Although this Court may not undertake to reweigh the evidence, it must determine whether the evidence was evaluated rationally and according to the foregoing principles in the first instance.

The reasons cited by the ALJ largely related to

inconsistencies between Plaintiff's claims of completely

disabling pain and other evidence. Inconsistent statements are

matters generally considered in evaluating credibility and are

properly factored in evaluating the credibility of a claimant

with respect to subjective complaints. Included in the factors

that an ALJ may consider in weighing a claimant's credibility are

the claimant's reputation for truthfulness; inconsistencies

either in the claimant's testimony or between the claimant's

testimony and the claimant's conduct, daily activities, or work

record; and testimony from physicians and third parties

concerning the nature, severity, and effect of the symptoms of

which the claimant complains. Thomas v. Barnhart, 278 F.3d 947,

958-59 (9th Cir. 2002). The ALJ may consider whether the

Plaintiff's testimony is believable or not. Verduzco v. Apfel,

188 F.3d 1087, 1090 (9th Cir. 1999).

One type of inconsistency relied on by the ALJ was that

apparent between Plaintiff's claims of total disability and

Plaintiff's activities of daily living. The mere fact of a

claimant's carrying on certain daily activities does not

necessarily detract from credibility as to overall disability.

However, a negative inference is permissible where the activities

contradict the other testimony of the claimant, or where the

activities are of a nature and extent to reflect transferable

work skills. Daily activities support an adverse credibility

finding if a claimant is able to spend a substantial part of his

day engaged in pursuits involving the performance of physical

functions or skills that are transferable to a work setting. Orn

v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Morgan v.

1 Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir.

2 1999); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

3     The ability to fix meals, do laundry, work in the yard, and

4 occasionally care for a friend's child were evidence of an

5 ability to work because they reflected participation for a

6 substantial part of the day in pursuits involving the performance

7 of physical functions transferable to a work setting. Morgan v.

8 Commissioner, 169 F.3d 595, 600 (9th Cir. 1999). In Thomas v.

9 Barnhart, 278 F.3d 947, 959 (9th Cir. 2002), the claimant's

10 ability to perform various household chores such as cooking,

11 laundry, washing dishes, and shopping, was considered to be

12 inconsistent with the claimant's subjective complaints and to be

13 a basis for a finding that she lacked candor with respect to her

14 descriptions of her pain. Similar activities have been held

15 sufficient to constitute record support for a conclusion that a

16 claimant's daily activities were inconsistent with a claim of

17 totally disabling pain from fibromyalgia. Rollins v. Massanari,

18 261 F.3d 853, 857 (9th Cir. 2001).

19     Here, the ALJ concluded that the Plaintiff's driving,

20 housework, childcare, and shopping were inconsistent with

21 Plaintiff's claim of inability to do any work because of her pain

22 and fatigue. However, Plaintiff clearly qualified her testimony

23 by indicating that she had a very limited ability to sustain her

24 participation in these tasks. Although substantial evidence

25 supported the ALJ's reasoning in the sense that Plaintiff did

26 state that she could do the activities in question, the Court is

27 concerned that other defects in the ALJ's consideration of the

28 evidence prevented the ALJ from evaluating properly the totality

14

of Plaintiff's testimony in light of the requirement that the claimant be able to engage in work activity on a regular and continuing basis.[5] In this circuit it is established that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations; the relatively more grueling work environment may prevent periodic rest, the taking of medication, or other adjustments possible in the home environment, and thus the activities of the claimant might be such that they cannot be said to be inconsistent with the claimant's subjective claims. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) (chronic fatigue syndrome). Analysis must take place with an appropriate framework for assessing a disability claim in the context of the specific disease. <u>Id.</u> at 723 n. 4. Because of related errors discussed below, the Court cannot conclude that the ALJ's reasoning in this respect was clear and convincing in force.

The ALJ relied on the infrequency of Plaintiff's treatment

---

[5] Social Security regulations define residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." <u>Reddick v. Chater</u>, 157 F.3d 715, 724 (9th Cir. 1998) (citing 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c) and <u>Lester v. Chater</u>, 81 F.3d 821, 833 (9th Cir. 1995)). The Commissioner must evaluate the claimant's "ability to work on a sustained basis." <u>Id.</u> (citing 20 C.F.R. § 404.1512(a)); <u>Lester</u>, 81 F.3d at 833); <u>see</u> 20 C.F.R. § 416.945. A "regular and continuing basis" means eight hours a day, five days a week, or an equivalent work schedule. S.S.R. 96-8p at 1, 2. The process involves an assessment of physical abilities and then of the nature and extent of physical limitations with respect to the ability to engage in work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). Occasional symptom-free periods and even the sporadic ability to work are not inconsistent with disability. <u>Reddick v. Chater</u>, 157 F.3d at 724.

for fibromyalgia. Frequency is a relative term, but even allowing for some flexibility in discerning frequency, there is no substantial evidence to support the ALJ's conclusion. As the history of Plaintiff's treatments set forth above shows, Plaintiff often sought treatment for her fatigue, weakness, tingling, and pain even before she saw the rheumatologist around the time of her alleged date of onset. She began seeing Dr. Berry in June 2005, but she continued to consult Dr. Patel for her symptoms of fibromyalgia, including pain, aching, weakness, and fatigue. She also saw a neurological specialist for work-up and follow-up in June and August 2005. If one considers all the treatment sources, and not just Dr. Berry, Plaintiff saw at least one treatment source for her fibromyalgia-related complaints, and often saw more than one, during every month between June 2005 and December 2007 (the period of treatment reflected in the record after the alleged onset date), with the exception of periods of no treatment recorded in September and October 2005, May 2006, July and August 2006, October 2006 through February 2007, June 2007, and September through November 2007. Thus, although there were several gaps in treatment, for the most part Plaintiff sought treatment regularly and often.

The ALJ also characterized Plaintiff's treatment as conservative, consisting of only medications, and as inconsistent with the type of treatment one would expect for a totally disabled individual.

Generally, an ALJ may rely on the conservative nature of treatment or a lack of treatment in rejecting a claimant's subjective complaint of pain. Johnson v. Shalala 60 F.3d 1428,

1433-34 (9th Cir. 1995). However, the adequacy of the ALJ's reasoning must be assessed in the context of the specific impairment in question, namely, fibromyalgia.

It is recognized that fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue; common symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and sleep disturbance that can exacerbate the cycle of pain and fatigue associated with the disease. Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004). It has been recognized that medical books and web sites note that one of the main symptoms of fibromyalgia is the presence of multiple tender points, or pain when slight pressure is applied to various parts of the body. See, Rogers v. Astrue, 2008 WL 850131, *9 n. 6 (E.D.CA March 28, 2008). It is further recognized that the cause of fibromyalgia is unknown; there is no cure; the disease is diagnosed solely on the basis of patients' reports of pain and other symptoms based on a set of diagnostic criteria involving a requirement of a flinching reaction by the patient when firm pressure is applied to at least eleven of eighteen fixed locations on the body; and there are no laboratory tests recognized as confirming the diagnosis. Benecke v. Barnhart, 379 F.3d at 590; Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (quoting Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)). Rheumatology is the relevant specialty for fibromyalgia. Benecke v. Barnhart, 379 F.3d at 594. It has been held to be error to require objective evidence for fibromyalgia, a disease that eludes objective measurement. Id. at 594 (quoting

17

Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003)).

Here, given the nature of fibromyalgia and the absence of any cure for the disease, it is difficult to imagine what treatment, if any, that is less conservative and that Plaintiff neglected to seek or undertake. The ALJ's reasoning in this regard was not clear and convincing.

Likewise, the ALJ's reliance on the absence of muscle atrophy, loss of strength, or difficulty moving as a basis for rejecting claimed fatigue and weakness is not clear and convincing in force. The absence of muscle atrophy might reflect some inconsistency with claimed limitations of movement, although the ALJ did not cite the factor for that particularized conclusion. However, it has been recognized that one of the most striking aspects of fibromyalgia is the absence of symptoms that lay people ordinarily associate with joint and muscle pain. Joints in fibromyalgia patients appear normal; musculoskeletal examinations generally indicate no objective joint swelling or abnormality in muscle strength, sensory functions, or reflexes. See, Rollins v. Massanari, 261 F.3d 853, 863 (9th Cir. 2001) (dissenting opinion citing medical sources). Thus, because atrophy, loss of strength, or difficulty with range of motion would not necessarily be associated with fibromyalgia, the absence of such symptoms does not rise to clear and convincing probative force as a basis for rejecting subjective complaints of fatigue, weakness, or serious pain resulting from the disease.

Similarly, the ALJ relied on Plaintiff's normal gait, her being neurologically intact, her normal EMB/NCV test results, and the absence of assistive devices as inconsistent with Plaintiff's

complaints of weakness and thus as presenting a significant
absence of objective evidence. There is no basis for inferring
that abnormalities in the stated areas would be consistent with,
or indicative of, fibromyalgia. Hence, the absence of such
abnormalities is not significant to the extent of being clear and
convincing. Likewise, because an absence of muscle strength is
not a marker of fibromyalgia, ability to move without assistive
devices is not significantly inconsistent with Plaintiff's
subjective complaints.

Although the inconsistency of objective findings with
subjective claims may not be the sole reason for rejecting
subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792
(9th Cir. 1997), it is generally one factor which may be
considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th
Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir.
1999). However, the specific errors committed in this case
concern the absence of objective medical evidence of
fibromyalgia. The ALJ clearly considered this factor to be very
important in light of his express reliance on the weight of the
objective evidence and the paucity of objective clinical
findings, as well as his repeated references to the absence of
the multiple, objective factors already discussed. However,
because the only objective factors reliably used to diagnose
fibromyalgia concern the so-called tender or trigger points, the
absence of other objective medical evidence to support
Plaintiff's subjective claims does not rise to the level of clear
and convincing probative force.

Even the ALJ's express reasoning concerning trigger points,

the objective marker of fibromyalgia, was flawed because it was not supported by substantial evidence. The ALJ stated that the only mention of trigger points was on December 16, 2005. However, on June 15, 2005, Dr. Berry also noted multiple trigger points over Plaintiff's neck, shoulders, low back, lumbar paraspinals, hips, and knees, and he concluded that Plaintiff had classic fibromyalgia syndrome. (A.R. 136.)

The ALJ's reasoning that the record did not show that Plaintiff required any special accommodations, such as special positions, to relieve her pain or other symptoms, was not supported by the record. To the contrary, it was clear from the record that Plaintiff needed to stand during the hearing because she had to ask to stand. (A.R. 273.) It further appears that the ALJ actually adopted a sit-stand option for Plaintiff as part of her RFC because the jobs chosen as representative for Plaintiff's limitations had a sit-stand option. (A.R. 280-82, 21.)

The ALJ relied on the fact that prescribed medications, including Cymbalta and Levoxyl, had moderated Plaintiff's pain; Plaintiff took the appropriate medications for her alleged impairments, but the objective medical evidence showed that the medications had been relatively effective in controlling Plaintiff's symptoms, and Plaintiff had not alleged any side-effects from the medication.

The Court notes that Cymbalta was prescribed for depression and Levoxyl for thyroid disorder; it is therefore somewhat curious that the ALJ relied on them as having affected Plaintiff's pain. (A.R. 89, 116, 123, 127, 131.) Further, contrary to the ALJ's express statement, Plaintiff did assert

that she suffered side-effects from her medications. Although on some forms Plaintiff claimed headaches and dry mouth as the only side-effects (from Elavil) (A.R. 123, 116), Plaintiff testified that her medicines helped alleviate her symptoms a little, but they caused sleepiness and dizziness, which caused her to lie down for twenty to thirty minutes between eight and ten times daily. (A.R. 269, 272, 276.) She expressly disagreed with the assertion that medications would make her fibromyalgia better. (A.R. 37.) Thus, the ALJ's reasoning concerning her allegations was not supported by substantial evidence and lacked sufficient probative weight.

With respect to the objective medical evidence, progress notes reflected that pain medication helped in March 2006 (A.R. 194), but notes during that time period reflect that Plaintiff complained of all her body hurting despite her medications (A.R. 197); indeed, overall, Plaintiff continued to take medications, but the dosage of the medications was often adjusted. Thus, any inference from isolated comments regarding episodic improvement from medications was relatively weak.

The record does support the ALJ's reasoning that there was no evidence of loss of weight due to loss of appetite due to pain. However, as Defendant notes, Plaintiff's doctors had recommended exercise and diet in March 2004, and had prescribed a diet of 1,000 calories a day in April 2004 when she weighed 194 pounds; she was diagnosed with obesity in later 2007 when she weighed 200 pounds. (A.R. 182-84, 218, 224.) The Commissioner has recognized that in most people, even active treatment for obesity results in limited effects. Orn v. Astrue, 495 F.3d 625, 636 (9th

Cir. 2007) (citing Soc. Sec. Ruling 02-1p). The Court further notes that Plaintiff's obesity does not appear to have been considered as an impairment in the ALJ's decision (A.R. 18-19) or otherwise adverted to in the ALJ's analysis. Therefore, the Court cannot conclude that the ALJ's reasoning in this regard was clear and convincing.

There is mixed support for the reason that there was no evidence of sleep deprivation due to pain. Plaintiff did report that she slept well, would wake up only once at night occasionally, and did not take her full Elavil dose because it caused sleepiness. (A.R. 194-95, 197.) However, she also reported that she had severe pain and tossed and turned at night. (A.R. 135.)

The ALJ reasoned that none of Plaintiff's treating physicians had opined that she was totally and permanently disabled from any kind of work. It is permissible to rely upon opinions of physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). A doctor's opinion that a claimant can work is appropriately considered. Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995). However, Plaintiff's treating physician, Dr. Berry, had repeatedly indicated in 2005 that Plaintiff was disabled from her previous heavy physical labor as a farm worker (A.R. 133, 136, 177); further, he had indicated that Plaintiff was unable to work in 2006 and 2007 (A.R. 235, 245). Under the circumstances, Dr. Berry's clear determinations that he considered Plaintiff unable to work were consistent with Plaintiff's subjective complaints, and they

significantly undercut the probative weight of the ALJ's reliance on the absence of a more specific, detailed assessment that totally prohibited all work.

In summary, the Court concludes that significant portions of the ALJ's reasoning concerning Plaintiff's credibility was undertaken pursuant to incorrect principles of law, lacked the support of substantial evidence in the record, or under the circumstances lacked the requisite clear and convincing force.

Where only some of the specific reasons stated by an ALJ for rejecting an applicant's credibility are legally sufficient or supported by the record, but others are not, the Court must consider whether the ALJ's reliance on invalid reasons was harmless error. Batson v. Commissioner of Social Security administration, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Such errors are harmless and do not warrant reversal where there remains substantial evidence supporting the ALJ's conclusions on credibility, and the error does not negate the validity of the ALJ's ultimate credibility conclusions. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1162 (9th Cir. 2008). The relevant inquiry is not whether the ALJ would have made a different decision absent any error, but rather whether the ALJ's decision remains legally valid despite such error. Id.

Here, there were multiple errors affecting multiple factors. Further, it is clear that the entire framework for the ALJ's evaluation was faulty because the ALJ made assumptions in the analysis that were inappropriate in light of the nature of Plaintiff's impairment. The Court is mindful of the difficulty of

assessing credibility in connection with an impairment manifested without much in the way of objective indicia. However, a claimant is entitled to a fair, thorough review of appropriate factors. Given the nature and extent of the errors made by the ALJ in the evaluation of Plaintiff's credibility here, the Court concludes that they negate the validity of the ALJ's ultimate credibility conclusions.

IV. <u>Expert Opinions</u>

With respect to the opinions of the medical experts, the ALJ stated:

> As for the opinion evidence, I give little weight to the opinion of attending physician Martin Berry, M.D., that the claimant is "unable to work" due to pain and fatigue (Exhibits 8F/4; and 10F). By regulation, opinions that the claimant is "disabled" or "unable to work" are not entitled to any special significance, even when offered by a treating source. (Citations omitted.) He has failed to give any specific functional limits. Further, the conculsory (sic) opinion is not supported by the substantial evidence of record.

Plaintiff challenges the light residual functional capacity (RFC) with a sit-stand option as not supported by substantial evidence. Plaintiff contends that the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Dr. Berry.

A. <u>Medical Record</u>

Records of treatment that preceded Plaintiff's alleged onset date of June 1, 2005, reflect that Plaintiff sought and received examinations and treatment from treating sources concerning various symptoms and medical conditions, including pain, aching all over her body, insomnia, and fatigue and weakness. (A.R. 180-231, 231, 222-23, 217-18, 215, 213, 210-11, 203-04.)

Dr. Berry treated Plaintiff for a year and one-half, seeing

her about a dozen times between June 15, 2005 and December 2007.

On June 15, 2005, Dr. Martin Berry, M.D., who was board-certified in internal medicine and rheumatology, and whose practice was limited to rheumatology, performed a rheumatologic evaluation of Plaintiff, who had been working as a farm laborer six days a week, eight hours a day. (A.R. 135-41.) Plaintiff complained of severe, generalized musculoskeletal pain involving her neck, shoulders, back, knees, and feet. The general review of systems was noncontributory; Plaintiff was alert and in no acute distress; there was right costovertebral angle tenderness, 1+ to 2+; the extremities and neurologic exam were within normal limits; and her joints were not red, swollen, or warm, and she had good range of motion. Joint exam did show multiple trigger points over Plaintiff's neck, shoulders, low back, lumbar paraspinals, hips, and knees. Dr. Berry's impression was classic fibromyalgia syndrome. Plaintiff was already on appropriate medicine, including Gabapentin. It was noted that nonsteroidals, higher doses of Gabapentin, and Elavil might be tried. (A.R. 136.)

In connection with his exam of June 15, 2005, Dr. Berry opined that Plaintiff was unable to do heavy physical labor, and that he would support "an ongoing State Disability claim." (A.R. 136.) Dr. Berry stated:

> Unfortunately, with her fibromyalgia, she is not capable of doing this type of work. I told her that she might consider applying for Social Security Disability when her State Disability runs out.

(A.R. 136.)

In June 2005, x-rays of Plaintiff's cervical spine revealed

no cervical spine fracture or other acute changes, and no
significant chronic changes; there were no signs of
osteoartrithis. (A.R. 158, 165.)

On July 1, 2005, Dr. Berry stated that Plaintiff had "mostly
fibromyalgia." He did not otherwise refer to clinical findings or
findings on examination. (A.R. 133-34.) Dr. Berry ruled out
lupus. (A.R. 133, 136, 177. ) He approved disability for three
months. He wrote to Dr. Bravo:

> I do not feel she is capable of doing heavy physical
> labor such as field work. It does not appear to me
> that she is able to do any other kind of labor with
> her level of training, experience, education, etc. I
> will help out with disability papers.

(A.R. 133.) He also stated on a prescription form "Rosario
Cota-total/permanent disability-fibromyalgia." (A.R. 252.)

In the June 2005, Plaintiff saw Dr. Asela P. Jumao-as, M.D.,
at the Kern County Neurological Medical Group, Inc., where she
complained of weakness, constant body pain and fatigue, tingling
in her hands, and pain in the joints, neck, and low back.
Plaintiff took Acetaminophen with Codeine. Examination was
positive for weakness and numbness in the hands, as well as pain
in the neck, joints, and low back. There was tenderness over the
flexor tendons of the wrists. Sensory exam was intact to
vibration and pin; strength was full against resistance; and
tone, movement, and muscle bulk were normal. The impression in
June was probable fibromyalgia, rule out cervical radiculopathy
versus carpal tunnel syndrome. In August 2005, notes of follow-up
revealed that Plaintiff complained of fatigue, occasional arm
tingling and heaviness; recent nerve conduction and needle EMG
tests of the upper extremities had been normal, as was a

neurological exam which revealed normal muscle bulk and strength with tender muscles of the upper back and neck; there was no evidence of CTS, ulnar neuropathy, or cervical radiculopathy; the opinion was that the symptoms were probably secondary to fibromyalgia. The recommendation was an exercise program, and to avoid narcotics. (A.R. 143-53.)

On August 15, 2005, non-examining state agency medical consultant George W. Bugg, M.D., opined that because of fibromyalgia, Plaintiff could lift and/or carry twenty pounds occasionally, ten pounds frequently, stand, walk, and/or sit for about six hours in an eight-hour day and engage in unlimited pushing and pulling; there were no postural or other limitations. (A.R. 166-75.)

On August 29, 2005, Dr. Berry examined Plaintiff. No notation of any findings on examination are reflected. Dr. Berry stated:

> She is unable to do heavy labor. She has generalized fibromyalgia. She has quite a bit of pain in her elbows. Her laboratory work did show a positive ANA, but she does not have clinical features of lupus. She takes Cymbalta, Neurontin, and Levoxyl. She will return here for follow-up in three months. Apparently she is getting state disability, but was denied Social Security. I will see her back in another three months.

(A.R. 177, 241.)

Non-examining state agency consultant Keith M. Quint, M.D., reaffirmed Dr. Bugg's assessment on November 15, 2005. (A.R. 178-79.)

On November 29, 2005, Plaintiff visited Dr. Berry and had "more aches and pains." Dr. Berry stated that she "has mostly fibromyalgia type problems" and was still applying for

disability. Plaintiff was on Cymbalta and Levoxyl; Neurontin did not appear to be helping; she was on 25 milligrams of Elavil nightly and 7.5 milligrams of Mobic every morning; she would return for follow-up in a few weeks. (A.R. 240.)

On December 16, 2005, Dr. Berry reported that Plaintiff's dose of Elavil was cut in half to ten milligrams, and Plaintiff did well; she was off the Gabapentin/Neurontin. He noted that Plaintiff was on state disability, had applied for Social Security disability, and was now staying home; due to her pain and stiffness, she did not feel she could work. Dr. Berry stated that he supported her disability claim. He noted, "She has generalized pain, stiffness, and trigger points consistent with significant fibromyalgia pain." (A.R. 239.)

In February 2006, Dr. Berry stated that Plaintiff had "mostly fibromyalgia." He filled out forms for disability and indicated Plaintiff would be seen in another few months. (A.R. 238.)

In April 2006, Dr. Berry noted that Plaintiff continued to have pain and stiffness in her neck and shoulders. She would continue with Motrin, Cymbalta, Neurontin, and Elavil and would return in two months. (A.R. 237.)

In June 2006, Dr. Berry wrote that Plaintiff was about the same with aches, pains, and fatigue and was on her usual medicine. She had fibromyalgia with no definite features of lupus; there would be no changes in her regimen, and she would return for follow-up in six months and would follow with Dr. Crowley, her primary care doctor. (A.R. 236.)

In December 2006, Plaintiff saw Dr. Berry. He reported that

Plaintiff had fibromyalgia type pains. He wrote, "I do not feel she is capable of work given all the aches and pains she is experiencing." He continued her Ibuprofen and Cymbalta, which had helped, and planned to see her in four months. (A.R. 235.)

In April 2007, Dr. Berry wrote that Plaintiff had chronic fibromyalgia with pain, fatigue, anxiety, and poor sleep. She continued with Ibuprofen, Cymbalta, and Elavil. He stated, "I will support her disability claim." She was to return for followup in four months. (A.R. 233.)

In July 2007, Plaintiff was taking 600 milligrams of Neurontin nightly, and Ibuprofen; her medications were refilled. She had mostly fibromyalgia type problems and would return in six months for follow-up. (A.R. 234.)

On December 31, 2007, Dr. Berry wrote that Plaintiff had chronic, severe pain, fibromyalgia, and was unable to work due to pain and fatigue issues. (A.R. 245.)

B. Legal Standards

The standards for evaluating treating source's opinions are as follows:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by

the treating physician; and the "nature and extent
of the treatment relationship" between the patient
and the treating physician. Id. §
404.1527(d)(2)(i)-(ii). Generally, the opinions of
examining physicians are afforded more weight than
those of non-examining physicians, and the
opinions of examining non-treating physicians are
afforded less weight than those of treating
physicians. Id. § 404.1527(d)(1)-(2). Additional
factors relevant to evaluating any medical
opinion, not limited to the opinion of the
treating physician, include the amount of relevant
evidence that supports the opinion and the quality
of the explanation provided; the consistency of
the medical opinion with the record as a whole;
the specialty of the physician providing the
opinion; and "[o]ther factors" such as the degree
of understanding a physician has of the
Administration's "disability programs and their
evidentiary requirements" and the degree of his or
her familiarity with other information in the case
record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

   With respect to proceedings under Title XVI, the Court notes

that an identical regulation has been promulgated. See, 20 C.F.R.

§ 416.927.

   As to the legal sufficiency of the ALJ's reasoning, the

governing principles have been recently restated:

The opinions of treating doctors should be given more
weight than the opinions of doctors who do not treat
the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th
Cir.1995) (as amended).] Where the treating doctor's
opinion is not contradicted by another doctor, it may
be rejected only for "clear and convincing" reasons
supported by substantial evidence in the record. Id.
(internal quotation marks omitted). Even if the
treating doctor's opinion is contradicted by another
doctor, the ALJ may not reject this opinion without
providing "specific and legitimate reasons" supported
by substantial evidence in the record. Id. at 830,
quoting Murray v. Heckler, 722 F.2d 499, 502 (9th
Cir.1983). This can be done by setting out a detailed
and thorough summary of the facts and conflicting
clinical evidence, stating his interpretation thereof,
and making findings. Magallanes [v. Bowen, 881 F.2d
747, 751 (9th Cir.1989).] The ALJ must do more than
offer his conclusions. He must set forth his own
interpretations and explain why they, rather than the

30

doctors', are correct. <u>Embrey v. Bowen</u>, 849 F.2d 418,
421-22 (9th Cir.1988).
<u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir.1998);
accord <u>Thomas</u>, 278 F.3d at 957; <u>Lester</u>, 81 F.3d at
830-31.

<u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).

Further, the path of analysis required to be followed by an
ALJ is established. The ALJ is first required to determine
whether or not the opinion of the treating physician will be
given controlling weight, which in turn requires consideration of
whether or not the treating physician's opinion is well-supported
by medically acceptable clinical and laboratory diagnostic
techniques and is not inconsistent with the other substantial
evidence in the case record. <u>Orn</u>, 495 F.3d at 631.

If not given controlling weight, the opinion is then subject
to consideration in light of other specified factors, including
the nature and extent of the treatment relationship, the amount
of relevant evidence that supported the opinion, the quality of
the explanation provided, the consistency of the opinion with the
record as a whole, the specialty of the doctor providing the
opinion, and other factors such as the degree of understanding of
the Commissioner's disability programs and their evidentiary
requirements and the degree of his or her familiarity with the
other information in the record. <u>Orn</u>, 495 F.3d at 631

C. <u>Analysis</u>

The first two reasons given by the ALJ, namely, that the
opinion that Plaintiff was unable to work due to pain and fatigue
was an opinion as to the ultimate disability of Plaintiff, and it
did not state specific functional limits, were essentially the
same reason: the opinion did not specifically address all or

31

enough of the precise functional capacities pertinent to determination of Plaintiff's RFC.

A determination of whether or not a claimant meets the statutory definition of disability is a legal conclusion reserved to the Commissioner; the opinion of a medical source on the ultimate issue of disability is not conclusive. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). Substantial evidence supports this conclusion. However, it is a reason concerning the form of the opinion, and not necessarily the soundness of the opinion.

The only other reason stated was that the opinions of Dr. Berry were not supported by the substantial evidence of record. The only evidence that supported the ALJ's decision concerning Plaintiff's RFC was the opinions of the non-examining, non-treating state agency physicians; no sufficiently specific opinion regarding Plaintiff's RFC by a treating or examining physician was in the record. The ALJ did not undertake to examine any factors other than the overall state of the evidence of record; there was no analysis of factors relevant to the treating relationship or the specialty of the doctor.

The ALJ is to evaluate the opinions of non-treating, non-examining sources using the relevant factors for evaluating expert opinions and must, unless the treating source's opinion is given controlling weight, explain the weight given to the opinions. 20 C.F.R. §§ 404.1527(f) and 416.927(f); see Soc. Sec. Ruling 96-6p at 1. The opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other

evidence in the record. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002). Independent clinical findings can be either 1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or 2) findings based on objective medical tests that the treating physician has not himself or herself considered. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).

The ALJ's characterization of the medical evidence of record was extremely general, and so the Court cannot be sure that the ALJ did not view that evidence with the same apparent, erroneous conceptions concerning Plaintiff's impairment. The ALJ did not explain the weight put on the opinions of the state agency physicians. The opinions of the nontreating doctors were necessarily based on the findings of the examining doctors, including the Comprehensive Medical Group (Dr. Patel's office), the neurology group, and Dr. Berry. The initial opinion of Dr. Bugg appears to have been based on Dr. Berry's findings. (A.R. 174.) Further, Dr. Bugg specifically noted that the severity of the symptoms and their alleged effect on function was consistent, in his judgment, with the total medical and non-medical evidence, including statements by the claimant and others, observations regarding activities of daily living, and alterations of usual behavior or habits. (A.R. 171.) There was no opinion from a treating or examining source regarding the claimant's physical capacities in the file. (A.R. 172.) The other state agency physician simply affirmed the prior assessment. (A.R. 173.)

With respect to the findings of the neurology group, as the preceding discussion of the evaluation of Plaintiff's subjective

complaints shows, the normal neurological findings were not shown
to be medically pertinent to a conclusion regarding Plaintiff's
diagnosis of fibromyalgia or functionality resulting from
fibromyalgia. Further, the neurologists considered Plaintiff's
symptoms to be secondary to fibromyalgia.

The limited findings revealed on the x-rays were likewise
not shown to be a pertinent basis for a determination of the
extent and effects of Plaintiff's fibromyalgia.

The concern presented by an absence of supporting findings
for the evidence that the ALJ necessarily credited is amplified
by the ALJ's apparent misunderstanding of the nature of
fibromyalgia. It is reasonable to conclude that the ALJ's
assessment of the substantial evidence of record was limited by
the ALJ's conclusions, evident in the preceding analysis of
Plaintiff's credibility, that various normal, objective findings
were demonstrative of the absence of fibromyalgia, although there
was no substantial evidence to support such a conclusion.

Given the absence of any express explanation by the ALJ for
his conclusion concerning the expert opinions, and further
considering the absence of supporting evidence and the other
demonstrated errors in the ALJ's consideration and reasoning, the
Court concludes that the ALJ failed to state specific, legitimate
reasons supporting his conclusion concerning the opinions of Dr.
Berry.

Further, there appears to be an absence of substantial
evidence to support the opinions upon which the ALJ apparently
relied. In the circumstances of the present case, the Court
concludes that there is a lack of substantial evidence supporting

1  the ALJ's conclusion concerning Plaintiff's RFC.

2  /////

3      V. Remedy

4      Based on the foregoing, the Court concludes that Plaintiff

5  did not receive appropriate consideration and analysis of her

6  subjective complaints or of the medical evidence, including the

7  expert opinions, and the ALJ's decision lacked a sufficient

8  statement of reasons supported by substantial evidence in the

9  record. The ALJ's decision was not supported by substantial

10 evidence in the record as a whole and was not based on proper

11 legal standards.

12     Further, in addition to the defects noted above, the ALJ

13 apparently did not consider the existence, severity, and

14 functional effects of Plaintiff's documented impairment of

15 obesity. Although Plaintiff does not raise this issue, in view of

16 the multiple errors that warrant further proceedings, the Court

17 notes it and concludes that the impairment should be addressed

18 upon remand. In determining whether an individual's impairments

19 are of sufficient medical severity that they could be the basis

20 of eligibility for benefits, the Commissioner shall consider the

21 combined effect of all the individual's impairments without

22 regard to whether any such impairment, if considered separately,

23 would be of such severity. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§

24 404.1545(e), 416.945(3); Soc. Sec. Ruling 96-8p. The ALJ is

25 responsible for determining the effect of an impairment upon the

26 other impairments and its effect on the claimant's ability to

27 work and general health. Celaya v. Halter, 332 F.3d 1177, 1182

28 (9th Cir. 2003). An ALJ must adequately explain his evaluation of

35

the combined effects of impairments. <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990).

Although the Court does not reach the issue of whether or not there was a duty to re-contact the treating physician to obtain a clarification of his opinion, the Court notes that the absence of a sufficiently specific, comprehensive, treating source's opinion as to Plaintiff's RFC has intensified the difficulty of obtaining an adequate analysis of Plaintiff's RFC. In light of the nature of Plaintiff's impairment, such an opinion would be extremely helpful. Remand will give the parties an opportunity to obtain such an opinion for the Commissioner's consideration.

A district court is authorized to affirm, modify, or reverse a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The decision whether to remand a matter pursuant to sentence four of § 405(g) or to order immediate payment of benefits is within the discretion of the district court. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000). When a court reverses an administrative agency determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 886 (9th Cir. 2004) (citing <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002)).

In the instant case, it is clear that the ALJ failed not only to state adequate reasons for rejecting Plaintiff's subjective claims, but he also failed appropriately to develop the record, consider evidence, and make and state findings

regarding the evidence. Because additional issues remain to be
addressed, and further because it is not clear that an award of
benefits to Plaintiff should result after the additional issues
are addressed on remand, the Court will order the matter remanded
for development of the record, further consideration of the
evidence, and entering of all necessary and appropriate findings
with respect to the applications for benefits pending before the
Court.

Accordingly, it IS ORDERED that

1. Plaintiff's social security complaint IS GRANTED, and

2. The matter IS REMANDED pursuant to sentence four of 42
U.S.C. § 405(g) for further consideration, consistent with this
decision, of Plaintiff's status as disabled, including whether or
not Plaintiff a) suffered from a severe impairment or
impairments, b) could perform her past work, and c) whether on
the basis of the Plaintiff's age, education, work experience, and
residual functional capacity, she could perform any other gainful
and substantial work within the economy; and

3. Judgment BE ENTERED for Plaintiff Rosario Cota and
against Defendant Michael J. Astrue.


IT IS SO ORDERED.

Dated:    March 30, 2009                _____/s/ Sandra M. Snyder_____
                                        UNITED STATES MAGISTRATE JUDGE

37