1

2

3

4              UNITED STATES DISTRICT COURT

5                  EASTERN DISTRICT OF CALIFORNIA

6

7  ROSARIO I. COTA,                  ) 1:08-cv-00842-SMS
                                     )
8               Plaintiff,           ) ORDER GRANTING IN PART AND
        v.                           ) DENYING IN PART DEFENDANT'S
9                                    ) MOTION FOR RELIEF FROM JUDGMENT
   COMMISSIONER OF SOCIAL            ) (DOC. 21)
10 SECURITY,                         )
                                     ) ORDER REMANDING CASE PURSUANT TO
11              Defendant.           ) SENTENCE FOUR OF 42 U.S.C. §
                                     ) 405(g)
12 _____    )
                                       ORDER DIRECTING THE CLERK TO
13                                     ENTER JUDGMENT IN FAVOR OF
                                       PLAINTIFF ROSARIO I. COTA AND
14                                     AGAINST DEFENDANT COMMISSIONER OF
                                       SOCIAL SECURITY
15

16      Pursuant to 28 U.S.C. § 636(c)(1), the parties have

17 consented to the jurisdiction of the Magistrate Judge to conduct

18 all proceedings in this matter, including ordering the entry of

19 final judgment.[1] Pending before the Court is Defendant's motion

20 for relief, filed on April 13, 2009, from the judgment previously

21 filed in this matter on March 31, 2009. Plaintiff filed

22 opposition, and Defendant filed a reply.

23      By decision and order dated March 31, 2009, the Court

24 determined that remand to the agency was required because the ALJ

25 had made errors in the course of findings concerning the medical

26

27      [1] On July 25, 2008, Judge Lawrence J. O'Neill ordered the case reassigned to Magistrate Judge Gary S.
   Austin for all further proceedings. On October 31, 2008, Judge Austin disqualified himself from all proceedings in
28 this action, and the action was reassigned to the undersigned Magistrate Judge.

                                     1

1  opinion of treating physician Dr. Berry and the credibility of

2  the claimant.

3      I. Legal Standards

4      Fed. R. Civ. P. 59(e) provides:

5          A motion to alter or amend a judgment must be
           filed no later than 28 days after the entry of the
6          judgment.[2]

7      A motion to amend a judgment under rule 59(e) is granted in

8  a district court's discretion upon the following grounds: 1) the

9  motion is necessary to correct manifest errors of law or fact

10 upon which the judgment is based; 2) the moving party presents

11 newly discovered or previously unavailable evidence; 3) the

12 motion is necessary to prevent manifest injustice; or 4) there is

13 an intervening change in controlling law. Turner v. Burlington

14 Northern Santa Fe R. Co., 338 F.3d 1058, 1063 (9th Cir. 2003). The

15 remedy provided is extraordinary and is to be used sparingly in

16 the interests of finality and conservation of judicial resources.

17 Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th

18 Cir. 2000). With respect to errors of law or fact, clear error is

19 required. Id. Such a motion may not be used to raise arguments or

20 present evidence for the first time when they could reasonably

21 have been raised earlier in the litigation. Id.

22     II. Credibility Findings

23     Defendant challenges the Court's conclusion that substantial

24 evidence did not support the ALJ's finding that Plaintiff was

25 only partially credible, arguing that the Court did not review

26 ─────────────────

27     [2] At the time Defendant filed its motion, the rule provided that the motion must be filed no later than ten
       days after the entry of judgment. Because Saturdays, Sundays, and legal holidays must be excluded from the
28     calculation pursuant to Fed. R. Civ. P.  6(a), the filing of the motion on April 13, 2009, after the entry of judgment
       on March 31, 2009, was timely.

1 the finding and record under the proper standard of review.

2 Defendant argues that the Court overlooked evidence that

3 supported the ALJ's conclusions and focused primarily on evidence

4 that could support a finding of disability. Defendant asserts

5 that because the evidence supported more than one rational

6 interpretation, the Court manifestly erred.

7     Defendant cites to page fourteen, lines nineteen through

8 twenty-six of the decision. The Court determined in substance

9 that although there was evidence that Plaintiff occasionally

10 could perform the stated activities of daily living, substantial

11 evidence did not support the ALJ's implicit conclusion that such

12 evidence was inconsistent with Plaintiff's claimed limitations,

13 which Plaintiff asserted precluded her from spending a

14 substantial portion of her day engaged in work activities or

15 activities transferable to a work setting.

16     Defendant cites to page twenty-one, lines twelve through

17 nineteen of the decision. The Court determined in substance that

18 although there was a report that pain medication had helped

19 Plaintiff at one point (A.R. 194, March 2006), additional

20 evidence in the record covering an extended period reflected

21 continued complaints of significant pain and need for adjustment

22 of medications; thus, the reasoning concerning Plaintiff's pain

23 medication being relatively effective in controlling her symptoms

24 was not clear and convincing. (See, e.g., A.R. 205 [April 2005,

25 complaints of pain all over, report that pain medications did not

26 help symptoms]; A.R. 202-03 [May 2005, body aches all over,

27 report that pills only worked for a while and the pain did not

28 resolve, complaint of severe pain in the shoulders, arms, legs,

1  and neck]; A.R. 199 [June 2005, complaint of joint pain despite

2  Tylenol No. 3 (i.e., Tylenol with Codeine)]; A.R. 152 [June 2005,

3  complaints of constant body pain and pain in the joints, neck,

4  and low back]; A.R. 197 [July 2005, complaint of pain all over

5  the body]; A.R. 195 [January 2006, complaints of generalized body

6  aches and pains]; A.R. 193 [April 2006, complaint of

7  arthralgias]; A.R. 191 [September 2006, frequent headaches]; A.R.

8  190 [September 2006, severe pain]; A.R. 186 [March 2007,

9  arthralgias].)

10      Defendant cites to page sixteen, lines nineteen through

11  twenty-one. The Court reviewed the evidence, which reflected that

12  Plaintiff persistently and often sought treatment.

13      Defendant cites to page eighteen, lines ten through eleven.

14  The Court essentially concluded that given the fact that atrophy

15  or loss of strength was not shown to have been associated with

16  fibromyalgia, the ALJ's reliance on the absence of muscle atrophy

17  or loss of strength as a basis for rejecting her claim of fatigue

18  or weakness due to fibromyalgia was not clear and convincing.

19      Defendant cites to page 22, lines seven through eight. The

20  ALJ had concluded that there was no evidence of sleep deprivation

21  due to pain. The Court stated that there was mixed support for

22  that reason but noted that Plaintiff had reported that she had

23  severe pain and tossed and turned at night. The Court essentially

24  concluded that the statement that there was no evidence of sleep

25  deprivation due to pain was not supported by the record.[3]

26      In engaging in the foregoing analysis, the Court used the

27  _____

28      [3]The Court further notes Plaintiff's testimony concerning her recent visit to Dr. Berry, at which he adjusted her medications to treat her inability to sleep due to pain (A.R. 271-72), which is discussed later in this order.

1  appropriate standard of review. The Court did not overlook the

2  evidence that supported the ALJ's findings; instead, the Court

3  looked at the totality of the evidence and evaluated it pursuant

4  to the correct standards.

5       III. <u>Dr. Berry's Opinion</u>

6            A. <u>Credibility Findings</u>

7       The ALJ's credibility findings relied in part on the

8  assertion that none of Plaintiff's physicians had opined that she

9  was totally and permanently disabled from any kind of work. (A.R.

10 20.) In the decision, the Court addressed that reasoning and

11 noted that Dr. Berry in 2005 had repeatedly indicated that

12 Plaintiff was disabled from her previous, heavy, physical labor;

13 in 2006 and 2007, Dr. Berry had indicated that Plaintiff was

14 unable to work due to fibromyalgia. (Decision and Order, p. 22,

15 l. 14 through p. 23, l. 3.) The Court concluded that in view of

16 the consistency of Dr. Berry's determinations concerning

17 Plaintiff's inability to work with Plaintiff's subjective

18 complaints, the ALJ's reasoning was not of clear and convincing

19 force.

20      The Court concludes that in so doing, the Court applied the

21 appropriate standard of review to the pertinent evidence. The

22 Court thus rejects Defendant's argument that the Court committed

23 clear error with respect to the credibility findings.

24            B. <u>Evaluation of Dr. Berry's Opinion</u>

25      In the decision, the ALJ stated:

26      As for the opinion evidence, I give little weight to
        the opinion of attending physician Martin Berry, M.D.,
27      that the claimant is "unable to work" due to pain and
        fatigue (Exhibits 8F/4; and 10F). By regulation,
28      opinions that the claimant is "disabled" or "unable

                              5

1
2
3
4

> to work" are not entitled to any special significance,
> even when offered by a treating source. 20 C.F.R. §§
> 404.1527(e)(3), 416.927(e)(3), and (Social Security
> Ruling 96-5p) (sic). He has failed to give any specific
> functional limits. Further, the conculsory (sic) opinion
> is not supported by the substantial evidence of record.

(A.R. 20.)

5
6
7
8
9
10
11
12

In its motion for relief from judgment, Defendant contends

that the Court applied an incorrect standard in evaluating the

ALJ's treatment of Dr. Berry's opinion that Plaintiff could not

work. This is because the doctor's opinion was essentially

limited to the conclusion that Plaintiff could not work, as

distinct from an opinion that evaluated Plaintiff's capacities

for performing the activities involved in any specific work.

13
14
15
16
17
18
19
20
21
22
23
24

Defendant correctly contends that a "medical opinion" is a

statement from an acceptable medical source that reflects a

judgment about the nature and severity of impairments, including

symptoms, diagnosis, prognosis, what one can still do despite

impairments, and physical or mental restrictions. 20 C.F.R. §§

404.1527(a)(2), 416.927(a)(2). An opinion on the issue of whether

or not an applicant is disabled is an opinion on an issue

reserved to the Commissioner because it constitutes an

administrative finding that is dispositive of a case. 20 C.F.R.

§§ 404.1527(e), 416.927(e). Thus, the opinion of a medical source

on the ultimate issue of disability is not conclusive. Magallanes

v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

25
26
27
28

The regulations further provide that in determining whether

an applicant meets the statutory definition of disability, the

Commissioner will review all the findings and other evidence that

supports a medical source's statement that an applicant is

6

1   disabled. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

2       Here, review of the Court's decision and order reveals that

3   in evaluating the ALJ's treatment of Dr. Berry's opinions, the

4   Court erroneously employed standards appropriate to medical

5   opinions of treating sources. (Decision and order, p. 29, l. 18

6   through p. 31, l. 23.) Although Dr. Berry's opinions that

7   Plaintiff could not perform heavy physical labor (A.R. 136, 133)

8   or heavy labor (A.R. 177) come close to constituting medical

9   opinions, Dr. Berry did not consistently use terminology

10  pertinent to analysis of Social Security claims, and he did not

11  specifically define the terms he used to describe Plaintiff's

12  capacities. Thus, the Court declines to interpret his opinions as

13  precluding "heavy work" as it is defined under Social Security

14  regulations.[4]

15      Because Dr. Berry's opinion was not a medical opinion, the

16  ALJ's treatment of this non-medical opinion as one reserved to

17  the Commissioner was legally correct. The Court's analysis was

18  clearly erroneous. Accordingly, with respect to that analysis,

19  Defendant is entitled to relief from judgment in the form of

20  reconsideration of the ALJ's treatment of the opinion.

21      A treating physician's controverted opinion on the ultimate

22  issue of disability may be rejected by an ALJ if the ALJ provides

23  specific and legitimate reasons. Holohan v. Massanari, 246 F.3d

24  1195, 1202 (9th Cir. 2001).

25      The reasoning that Dr. Berry's opinion was conclusory and

26

27      [4] "Heavy work" is defined as work involving lifting no more than 100
    pounds at a time with frequent lifting or carrying of objects weighing up to
28  fifty pounds. 20 C.F.R. §§ 404.1527(d), 416.967(d).

7

1  failed to state specific functional limits, standing alone, could
2  be specific and legitimate. Cf. 20 C.F.R. § 404.1527(d)(3); 20
3  C.F.R. § 416.927(d)(3) (permitting rejection of a medical opinion
4  because it is conclusional). Generally, the better an explanation
5  a source provides for an opinion, the more weight will be given
6  to the opinion. Id.; see, Morgan v. Commissioner of Social
7  Security 169 F.3d 595, 601 (9th Cir. 1999); Crane v. Shalala, 76
8  F.3d 251, 253 (9th Cir. 1996) (citing Murray v. Heckler, 722 F.2d
9  499, 501 (9th Cir. 1983)); Batson v. Commissioner of the Social
10 Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004).
11     However, the record does reflect that Dr. Berry made it
12 clear that it was Plaintiff's subjective symptoms of pain,
13 stiffness, and fatigue, related to his examinations that revealed
14 clinical signs of trigger points reflecting classic fibromyalgia
15 syndrome, that were the basis for his opinions of disability.
16 (A.R. 135-41, 136, 133, 252, 177, 241, 239, 235-36.)
17     The ALJ reasoned that the opinion was not supported by the
18 substantial evidence of record. (A.R. 20.) As the Court's
19 discussion in the original decision demonstrates, the ALJ was of
20 the view that objective signs other than trigger points were
21 required in order for a fibromyalgia sufferer to suffer severe
22 pain or disabling symptoms from the disease, a proposition that
23 is completely unsupported by the medical record. The ALJ
24 apparently believed that Plaintiff had not followed a proper
25 treatment regimen for disabling fibromyalgia, another proposition
26 unsupported by the medical record. The ALJ filtered all the
27 medical evidence of record through a lens that logically rendered
28 his negative determination a foregone conclusion. The ALJ's

1  misapprehension of the impairment of fibromyalgia prevents this

2  reasoning from being legitimate and supported by substantial

3  evidence. Further, it appears that the ALJ did not review the

4  entire record of Plaintiff's treatment in view of the statements

5  that trigger points were only mentioned once, Plaintiff was only

6  treated infrequently for fibromyalgia, and Plaintiff's

7  medications had been relatively effective in controlling her

8  symptoms.

9         IV. <u>Remedy for Errors concerning Credibility Findings</u>

10        Plaintiff argues that Plaintiff's subjective complaints

11 should be credited as true, and the Court should direct immediate

12 payment of benefits.

13        Where only some of the specific reasons stated by an ALJ for

14 rejecting an applicant's credibility are legally sufficient or

15 supported by the record, but others are not, the Court must

16 consider whether the ALJ's reliance on invalid reasons was

17 harmless error. <u>Batson v. Commissioner of Social Security</u>

18 <u>administration</u>, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Such

19 errors are harmless and do not warrant reversal where there

20 remains substantial evidence supporting the ALJ's conclusions on

21 credibility, and the error or errors do not negate the validity

22 of the ALJ's ultimate credibility conclusions. <u>Carmickle v.</u>

23 <u>Commissioner, Social Security Administration</u>, 533 F.3d 1155, 1162

24 (9th Cir. 2008). The relevant inquiry is not whether the ALJ would

25 have made a different decision absent any error, but rather

26 whether the ALJ's decision remains legally valid despite such

27 error. <u>Id.</u>

28        Here, the Court has already concluded in its original

1 decision and order that considering the entire record and the

2 nature and extent of the ALJ's errors, the ALJ's errors relating

3 to credibility findings negated the validity of the ALJ's

4 ultimate credibility conclusions. (Decision and order pp. 23-24.)

5 The Court notes that the remaining reasoning related to the ALJ's

6 statement that he incorporated his previous analysis of

7 Plaintiff's nonsevere impairments. (A.R. 19.) In that analysis,

8 the ALJ first had determined that Plaintiff had fibromyalgia

9 manifested by generalized pain, stiffness, fatigue, anxiety, and

10 poor sleep. (A.R. 18.) However, Plaintiff's other impairments

11 were not severe. Plaintiff's hypothyroidism, which Plaintiff

12 testified was controlled to some extent by thyroid medication but

13 caused fatigue, was determined to be stable with appropriate

14 treatment. (A.R. 18.) Plaintiff's osteoarthritis was not shown to

15 have been accompanied by significant clinical signs or symptoms

16 that established a severe impairment. (A.R. 18-19.) Plaintiff's

17 headaches had not been documented as a consistent problem or

18 treated with strong pain medications, and Plaintiff was

19 neurologically intact. (A.R. 19.) Plaintiff's complaints of

20 occasional depression and anxiety were associated with her

21 fibromyalgia, were not accompanied by abnormal mental clinical

22 signs, and had not resulted in a referral for a mental health

23 evaluation. (A.R. 19.)

24     This analysis related almost exclusively to Plaintiff's

25 other impairments and does not constitute reasoning legally

26 sufficient to support the ALJ's conclusions concerning

27 Plaintiff's subjective complaints relating to her fibromyalgia.

28     A district court is authorized to affirm, modify, or reverse

1 a decision of the Commissioner of Social Security, with or

2 without remanding the cause for a rehearing. 42 U.S.C. § 405(g).

3 The decision whether to remand a matter pursuant to sentence four

4 of § 405(g) or to order immediate payment of benefits is within

5 the discretion of the district court. Harman v. Apfel, 211 F.3d

6 1172, 1178 (9th Cir. 2000). Generally, an award of benefits is

7 directed where no useful purpose would be served by further

8 administrative proceedings, or where the record has been

9 thoroughly developed. Varney v. Secretary of Health and Human

10 Services, 859 F.2d 1396, 1399 (9th Cir. 1988).

11     Specifically with respect to testimony concerning subjective

12 symptoms such as those suffered by Plaintiff, a district court

13 should credit evidence that was rejected during the

14 administrative process and remand for an immediate award of

15 benefits if 1) the ALJ failed to provide legally sufficient

16 reasons for rejecting the evidence; 2) there are no outstanding

17 issues that must be resolved before a determination of disability

18 can be made; and 3) it is clear from the record that the ALJ

19 would be required to find the claimant disabled were such

20 evidence credited. Benecke v. Barhnart, 379 F.3d 587, 593 (9th

21 Cir. 2004); Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

22     The Court concludes that in the case before it, remand would

23 serve useful purposes, and thus, the Court will not credit

24 Plaintiff's testimony as true and proceed to order benefits.

25     It has been recognized that in cases where the testimony of

26 a vocational expert has failed to address a claimant's

27 limitations as established by improperly discredited evidence, it

28 is common to remand for further proceedings rather than order

1 payment of benefits. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180

2 (acknowledging that although generally a failure to provide

3 adequate reasons for rejecting the opinion of a treating or

4 examining doctor requires crediting the opinion as a matter of

5 law, where there is an absence of vocational testimony addressing

6 the limitations as established by improperly discredited

7 evidence, remand for further proceedings is appropriate); <u>Swenson</u>

8 <u>v. Sullivan</u>, 876 F.2d 683, 689 (9th Cir. 1989) (holding in

9 pertinent part that where an ALJ's rejection of subjective

10 complaints of symptoms was not supported by valid reasons, and

11 where there was a dearth of solid, expert vocational testimony

12 concerning the availability of jobs, remand was appropriate for

13 the ALJ to clarify and develop the record).

14      Here, it is not clear that if the testimony concerning

15 Plaintiff's regularly experienced subjective complaints were

16 credited, Plaintiff would be disabled; rather, the record

17 requires development.

18      The VE testified that one such as Plaintiff, who had to take

19 unscheduled breaks three to six times per day, for fifteen to

20 thirty minutes each, could not work. (A.R. 279-80.) However, this

21 limitation does not appear to have been anything more than an

22 initial reaction to an adjustment of Plaintiff's medications.

23 Plaintiff testified on January 7, 2008, that she had seen Dr.

24 Berry last on December 31, 2007; at that time he had increased

25 her Gabapentin (Neurontin) to treat body pain that prevented

26 sleep; he also gave her Amitriptyline (Elavil) to help her sleep.

27 These medications caused sleepiness and dizziness, which in turn

28 caused her to lie down for twenty to thirty minutes between eight

1 and ten times during a day. (A.R. 260, 268, 271-73.) It appears

2 that these side-effects were from doses or combinations of doses

3 of medications that Plaintiff had experienced at most one week;

4 it is not clear whether or not these new side-effects were

5 subject to amelioration by further adjustment of or changes to

6 Plaintiff's medications, or whether Plaintiff had even had an

7 opportunity to confer with her treating sources about such side-

8 effects.

9     Further, Plaintiff's testimony did not include specific data

10 as to her lifting and carrying capacity; she only testified that

11 she could lift a gallon of milk with two hands, and whatever that

12 weight was, it was not expressly presented to the vocational

13 expert. (A.R. 277.) The vocational expert's testimony concerning

14 even the weight requirements of the positions given based on

15 assumptions of light work capacity was inconsistent (A.R. 278,

16 280 [twenty pounds], 281-82 [twenty-five pounds]), and no figures

17 regarding the availability of positions was given for the

18 capacity to lift lesser amounts, such as ten pounds (A.R. 282).

19 Plaintiff did not testify at all to her carrying capacity. (A.R.

20 277, 262-82.) Plaintiff's limited ability to walk was not

21 addressed. (A.R. 276.) Thus, this is not a case in which it is

22 clear that if Plaintiff's testimony as to her generally

23 experienced subjective complaints were credited, she would be

24 disabled.

25     In addition, in view of the problems with the ALJ's

26 evaluation of the medical evidence of record, the matter must be

27 remanded to the ALJ to permit evaluation of the expert opinions

28 in a manner consistent with a legally correct view of Plaintiff's

1  impairment and the pertinent evidence in the record.

2          A. Duty to Develop the Record

3      In connection with this aspect of the case, the Court must

4  address an issue raised by Plaintiff that was not reached in the

5  original decision, namely, that the ALJ should have re-contacted

6  Dr. Berry for clarification or further explanation of his

7  opinions that Plaintiff was unable to work rather than rely on

8  the opinions of the non-treating, non-examining state agency

9  reviewing physicians, which had been rendered over two years

10 before the hearing, and which Plaintiff argued were stale.[5]

11     There was no treating physician's opinion regarding

12 Plaintiff's specific functional capacities before the ALJ; in

13 determining Plaintiff's residual functional capacity (RFC), the

14 ALJ had essentially adopted the opinions from 2005 of non-

15 examining state agency physicians with the addition of a sit-

16 stand option. The ALJ did not advert to those opinions or explain

17 the decision to include a sit-stand option, which was not the

18 subject of a medical opinion and was in fact inconsistent with

19 the opinions of the state agency physicians, who imposed no such

20 limitations.[6] (A.R. 166-75, 178-79.)

21 _____

22     [5] The law imposes a duty on the ALJ to develop the record in some
circumstances. 20 C.F.R. §§ 404.1512(d)-(f), 416.912(d)-(f) (recognizing a
duty of the agency to develop a medical history, recontact medical sources,
23 and arrange a consultative examination if the evidence received is inadequate
for a determination of disability); Brown v. Heckler, 713 F.2d 441, 443 (9th
24 Cir. 1983) (recognizing the ALJ's duty fully and fairly to develop the record
even if the claimant is represented by counsel). The duty arises when the
25 record before the ALJ is ambiguous or inadequate to allow for proper
evaluation of the evidence. Mayes v. Massanari, 262 F.3d 963, 968 (9th Cir.
26 2001).

27     [6] Indeed, the ALJ inconsistently concluded in his credibility analysis
that the record did not show that Plaintiff required any special
accommodations, breaks, or positions to relieve her pain or other symptoms.
28 (A.R. 20.)

14

1  The Court is mindful of the difficulty in determining both

2  RFC and the weight to be given subjective complaints presented to

3  an adjudicator by an impairment such as fibromyalgia, which is

4  associated with only limited objective indicia. Further, in the

5  interim, there has been delay in the processing of this case. By

6  the time this case is reheard upon remand, the opinions of the

7  non-examining state agency physicians will be about five years

8  old. Unless further development of the record occurs, Plaintiff

9  will be evaluated on the basis of completely stale information

10 from non-examining sources.

11  The Court emphasizes that the Social Security Administration

12 is based on an investigatory model; its proceedings are

13 inquisitorial and not adversarial in nature. The ALJ generally is

14 obligated to investigate facts and develop arguments for and

15 against granting benefits. Sims v. Apfel, 530 U.S. 103, 110-11

16 (2000). The regulations themselves specify that at a disability

17 hearing the ALJ will "look fully into the issues" and that the

18 ALJ "may stop the hearing temporarily and continue it at a later

19 date if he or she believes that there is material evidence

20 missing." 20 C.F.R. §§ 404.944, 416.1444.

21  In this case, Plaintiff was and may still be receiving

22 treatment by a physician of the appropriate medical specialty. In

23 light of the need for remand and the delays suffered by

24 Plaintiff, and given the investigatory, inquisitorial nature of

25 the proceedings, and further considering the nature of

26 Plaintiff's impairment and the difficulty that the ALJ has

27 already encountered in evaluating Plaintiff's RFC and subjective

28 complaints, the Court concludes that upon remand, the

15

1 Commissioner should undertake the obvious course and contact

2 Plaintiff's treating physician for an opinion regarding

3 Plaintiff's specific functional capacities, addressing all

4 Plaintiff's exertional and non-exertional limitations.

5     VI. <u>Obesity</u>

6     In connection with the request for relief from the judgment,

7 Defendant argues that the Court improperly concluded that the ALJ

8 engaged in reversible error in failing to evaluate Plaintiff's

9 obesity as an impairment. (Def.'s Memo. pp. 4-5.)

10     In the original decision, the Court mentioned Plaintiff's

11 obesity in the course of determining that the ALJ's reliance on

12 the absence of evidence of weight gain due to pain, as a basis

13 for a negative credibility finding, was not clear and convincing.

14 (Decision and order pp. 21-22.) At the hearing, Plaintiff

15 testified that she was five feet two inches tall and weighed 215

16 pounds. (A.R. 269.) The Court noted that Plaintiff had been

17 diagnosed as obese in 2007 when she weighed fifteen pounds less,

18 but she had gained weight despite a recommendation to diet when

19 at a lower weight in 2004. Because it is recognized that for most

20 obese people, even active treatment for obesity results in

21 limited effects, <u>Orn v. Astrue</u>, 495 F.3d 625, 636 (9th Cir. 2007)

22 (citing to Soc. Sec. Ruling 02-1p), and considering the ALJ's

23 failure to address the very pertinent information relating to

24 Plaintiff's specific weight condition in the record, the Court

25 concluded that the ALJ's reasoning was not clear and convincing.

26     In the decision and order, the Court again referred to

27 Plaintiff's diagnosed obesity out of a concern to avoid errors of

28 omission on remand. (Decision and order pp. 35-36.) The Court

1 noted that the ALJ had not considered "the existence, severity,
2 and functional effects of Plaintiff's documented impairment of
3 obesity," and it cited to legal standards requiring that all an
4 individual's impairments must be considered. (Id. at p. 35.) The
5 Court's use of the term "impairment" was imprecise and
6 technically incorrect because it is for the Commissioner not only
7 to determine the severity and functional effects of an
8 "impairment," but also to determine in the first instance whether
9 or not a diagnosed condition is a medically determinable
10 impairment. 20 C.F.R. §§ 404.1529(b), 416.929(b).

11       Although the Court did not determine that the ALJ committed
12 reversible error in not addressing Plaintiff's obesity, the Court
13 did instruct the parties that all impairments be addressed upon
14 remand and indicated that Plaintiff's obesity was an impairment.

15       Accordingly, Defendant is entitled to relief from the
16 direction to consider obesity as an impairment.

17       Instead of the previous direction, the Court substitutes an
18 admonition that Plaintiff's documented diagnosis of obesity be
19 considered to the extent appropriate on remand.

20       VII. Disposition

21       Accordingly, it IS ORDERED that

22       1) Defendant's motion for relief from the judgment IS
23 GRANTED IN PART AND DENIED IN PART; and

24       2) Insofar as Defendant requests relief from the judgment
25 with respect to the Court's decision regarding the ALJ's
26 credibility findings, Defendant's motion IS DENIED; and

27       2) Insofar as Defendant requests relief with respect to the
28 Court's treatment of the opinion of Dr. Berry and the Court's

17

1  description of Plaintiff's obesity as an impairment, Defendant's

2  motion for relief from the judgment IS GRANTED, and the Court has

3  reconsidered the ALJ's treatment of Dr. Berry's opinion and the

4  Plaintiff's obesity; and

5       3) Plaintiff's social security complaint IS GRANTED, and

6       2. The matter IS REMANDED pursuant to sentence four of 42

7  U.S.C. § 405(g) for further consideration, consistent with this

8  decision, of Plaintiff's status as disabled, including whether or

9  not Plaintiff a) suffered from a severe impairment or

10 impairments, b) whether Plaintiff could perform her past relevant

11 work, and c) whether on the basis of the Plaintiff's age,

12 education, work experience, and residual functional capacity, she

13 could perform any other gainful and substantial work within the

14 economy; and

15      3. Judgment BE ENTERED for Plaintiff Rosario Cota, and

16 against Defendant Michael J. Astrue.

17

18 IT IS SO ORDERED.

19 **Dated:    January 12, 2010**              /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

18